IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN CRUMP,

       **Plaintiff,**

       v.                                     CASE NO. 24-3046-JWL

**JOHNSON COUNTY BOARD
OF COMMISSIONERS, et al.,**

       **Defendants.**

## MEMORANDUM AND ORDER

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Johnson County Adult Detention Center in Olathe, Kansas ("JCADC"). Plaintiff has been granted leave to proceed in forma pauperis. This matter is before the Court for screening Plaintiff's Complaint (Doc. 1). Also before the Court is a motion (Doc. 3) filed by Plaintiff.

### I. Nature of the Matter before the Court

Plaintiff states that he is a practicing Muslim who adheres to the principles of Islam. (Complaint, Doc. 1, at 2.) He alleges that he was subjected to an unreasonably long "observation period" before his religious designation was recognized by officials of the JCADC. *Id*. at 14. Plaintiff further alleges that he was not given the proper food during Ramadan and was removed from the kosher diet without his own or a doctor's consent. *Id*. at 2. He claims that the salty food of the regular diet caused him to suffer a mild heart attack and severe stomach pain. Plaintiff alleges that the defendants committed fraud by trying to pass off regular diet items as halal or

kosher. *Id.* He further asserts that Jewish inmates are "preferred" over Muslims, and he is denied "all Muslim-related material" at the JCADC.[1] *Id.*

Plaintiff asserts violation of the Establishment Clause; the Free Exercise Clause; the Equal Protection Clause; RFCA; RLUIPA; 42 U.S.C. § 2000bb 1 to 4; 42 U.S.C. § 2000cc 1 to 5; the Fourteenth Amendment; 42 U.S.C. § 19971(b)(ii); 42 U.S.C. § 1985 (conspiracy to provide improper meals); and 42 U.S.C. § 1986. *Id.* at 4.

Plaintiff names the following defendants: the Summit Company, contracted commissary provider at the JCADC; the Johnson County Board of Commissioners; Summit administrators #1-3; JCADC administrators #1-4; Sheriff's office administrators #1-4; Sheriff Calvin Hayden; Nathanial LNU, Kitchen Manager; Dietician at the JCADC; the city of Olathe; HS Sergeant; and Sheriff's Deputies #1-4. Plaintiff seeks relief in the form of over $4.2 million in compensatory damages and over $7.8 million in punitive damages. *Id.* at 6.

## II. Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or an employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if a plaintiff has raised claims that are legally frivolous or malicious, that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)

---

[1] The Complaint is 27 pages long. It includes more detailed explanation and factual allegations, along with substantial argument, citations to case law, and many conclusory statements. This is a summary of Plaintiff's primary allegations.

(citations omitted); *Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992). A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v.*

*Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. DISCUSSION

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *McKinley v. Maddox*, 493 F. App'x 928 (10th Cir. 2012); *Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205 (10th Cir. 1999). In order to state a constitutional denial of free exercise of religion claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs." *Gallagher*, 587 F.3d at 1069. In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983." *Id.* at 1070. "If the prisoner satisfies this initial step, 'defendants may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley*, 493 F. App'x at 932 (citation omitted). The court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.* The Tenth Circuit has

4

identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010, unpublished) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316) (10th Cir. 2010)).  In *Strope*, the Tenth Circuit reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id.* at 1320–21; *id.* at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim).  We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Id.* (citing *Abdulhaseeb*, 600 F.3d at 1321).  In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

Recovery under RLUIPA[2] is limited to official capacity claims for equitable relief.  *See Sossamon v. Texas*, 131 S. Ct. 1651, 1655 (2011) (holding Eleventh Amendment immunity bars RLUIPA claims for money damages); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (noting RLUIPA does not permit individual capacity claims).

In *Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001), *cert. denied*, 536 U.S. 904 (2002), the Tenth Circuit specifically held that the limitation on recovery in § 1997(e)(e) applied to a First

---

[2] The Religious Land Use and Institutionalized Persons Act targets restrictions on the religious exercise of institutionalized persons.  42 U.S.C. §2000cc-1.

Amendment claim that prison officials denied the plaintiff a Kosher diet and to claims for actual or compensatory damages. *Id.* at 879, 881; *see also Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012).

The Court finds that the proper processing of Plaintiff's claims cannot be achieved without additional information from appropriate officials of the JCADC. *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991). Accordingly, the Court orders the appropriate JCADC officials to prepare and file a *Martinez* report. Once the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A.

## IV. Motion

Plaintiff has filed a Motion for Preliminary Injunction and Partial Summary Judgment (Doc. 3). The motion contains allegations that his legal writing supplies were being restricted and that he was not receiving proper medical care.[3] (Doc. 3, at 1.) The motion also contains a summary of the allegations made in the Complaint. *Id.* at 1-2. Plaintiff asks the Court to grant him partial summary judgment and award damages sua sponte. *Id*. He seeks enough damages that will allow him to fund his own medical and spiritual rehabilitation in a Muslim faith-based center." *Id*. at 3.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the

---

[3] These allegations are the subject of Plaintiff's other two pending lawsuits before this Court.

issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.,* 356 F.3d 1256, 1260 (10th Cir. 2004).

Plaintiff's allegations do not establish that injury is certain and not theoretical, or more than merely feared as liable to occur in the future. "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical." *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1189 (10th Cir. 2003) (internal quotation marks omitted). A preliminary injunction is only appropriate "to prevent existing or presently threatening injuries. One will not be granted against something merely feared as liable to occur at some indefinite time in the future." *State of Connecticut v. Commonwealth of Massachusetts,* 282 U.S. 660, 674 (1931).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted).

"[B]ecause the purpose of preliminary injunctions is to preserve the relative positions of the parties until trial, they are specifically disfavored if they alter the status quo, are mandatory (as opposed to prohibitory), or afford the movant all the relief that could be recovered after a full trial." *Rudnick v. Raemisch*, 731 F. App'x 753, 755 (10th Cir. 2018) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258-59 (10th Cir. 2005)). "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Id.* (quoting *Schrier*, 427 F.3d at 1259).

Here, Plaintiff requests a mandatory injunction that would alter the status quo and provide him with the primary relief he could recover after a trial. Moreover, while he claims that "the defendants are undeniably GUILTY" (Doc. 3, at 3) and that his allegations "can be 100% verified" (*id*.), he has not demonstrated through admissible evidence a likelihood of success on the merits such that his right to relief is clear and unequivocal and has not demonstrated a likelihood of imminent irreparable harm. For these reasons, the Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted and is not entitled to summary judgment. Thus, Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction and Partial Summary Judgment (Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that**:**

(1)     The JCADC officials shall submit the *Martinez* Report by **May 31, 2024**. Upon the filing of that Report, the Court will screen Plaintiff's Complaint. If the Complaint survives screening, the Court will enter a separate order for service.

(2) Officials responsible for the operation of the JCADC are directed to undertake a review of the subject matter of the Complaint:

    a. To ascertain the facts and circumstances;

    b. To consider whether any action can and should be taken by the institution to resolve the subject matter of the Complaint; and

    c. To determine whether other like complaints, whether pending in this Court or elsewhere, are related to this Complaint and should be considered together.

(3) Upon completion of the review, a written report shall be compiled which shall be filed with the Court and served on Plaintiff. If the JCADC officials wish to file any exhibits or portions of the report under seal or without service on Plaintiff, they must file such portions separately from the public report and provisionally under seal, to be followed immediately by a Motion to Seal or Redact Document(s). The JCADC officials are exempt from filing the Notice of Proposed Sealed Record under D. Kan. Rule 5.4.2(b).

(4) Statements of all witnesses shall be in affidavit form. Copies of pertinent rules, regulations, official documents, and, wherever appropriate, the reports of medical or psychiatric examinations shall be included in the written report. Any recordings related to Plaintiff's claims shall also be included.

(5) Authorization is granted to the JCADC officials to interview all witnesses having knowledge of the facts, including Plaintiff.

(6) No motion addressed to the Complaint shall be filed until the *Martinez* Report required herein has been prepared.

(7)   Discovery by Plaintiff shall not commence until Plaintiff has received and reviewed any Court-ordered answer or response to the Complaint.  This action is exempted from the requirements imposed under Fed. R. Civ. P. 26(a) and 26(f).

Copies of this order shall be transmitted to Plaintiff, to the Johnson County Sheriff, and to the Johnson County District Attorney.

**IT IS SO ORDERED**.

**Dated April 26, 2024, in Kansas City, Kansas.**

<u>S/ John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**