IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN CRUMP,

      **Plaintiff,**

      **v.**　　　　　　　　　　　　　　　　　　**CASE NO.  24-3046-JWL**

JOHNSON COUNTY BOARD
OF COMMISSIONERS, et al.,

      **Defendants.**

## MEMORANDUM AND ORDER
## TO SHOW CAUSE

Plaintiff brings this pro se case under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff is detained at the Johnson County Adult Detention Center in Olathe, Kansas ("JCADC").

The Court entered a Memorandum and Order ("M&O") (Doc. 9) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of the JCADC.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  The Court ordered JCADC officials to prepare and file a *Martinez* Report, stating that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A."  (Doc. 9, at 6.)   The *Martinez* Report (Docs. 17, 18, 20) (the "Report") has now been filed, and Plaintiff has filed an Amended Complaint ("AC") (Doc. 28).   The AC is before the Court for screening.  The Court's screening standards are set forth in the M&O.  *See* Doc. 9, at 2-4.

## I.  Nature of the Matter before the Court

The AC asserts that the defendants denied Plaintiff kosher meals during Ramadan and Passover, do not provide halal meals for Muslims, and served sack lunches of non-approved

halal food.  (AC, Doc. 28, at 2.)  The AC further alleges that the defendants forced Plaintiff to participate in Passover "by threat and force."  *Id*.  Plaintiff claims that the Sheriff's Office and Summit Company "maintain[ ] an unconstitutional policy that denied Crump his religious freedoms which forced Crump not to participate in Ramadan due to health issues related to the non halal food served and then forced to FAST for a month during Passover harming Crump."  *Id*.

Plaintiff alleges that Defendant Nathanial denied him a kosher meal during Ramadan, telling him that he could either stay on kosher or celebrate Ramadan.  Nathanial allegedly forced Plaintiff to fast during Passover.  *Id*. at 3.  According to Plaintiff, Nathanial told him that he would recommend Plaintiff's permanent removal from the kosher diet if Plaintiff chose not to accept the meals being served.  *Id*.

The AC further asserts that the deprivation of Plaintiff's religious freedoms "caused him actual physical injury and to choose between religious practices or physical injury."  *Id*. at 4.

Other allegations contained in the AC include:

- Summit Company intentionally tried to pass off non-halal food as halal and then provided a fake menu of food that was not given to inmates.  Plaintiff was given the same sack lunch as "intake."  *Id*. at 5.

- Defendants Zeeff, Hayden, and other unnamed "defendants" refused to intervene in Summit's fraud.  *Id*.

- Summit knowingly provided fake halal food and overcharged the citizens of Johnson County for it.  "This unjust enrichment was gained at the expense of Steven Crump's health in which he almost died."  *Id*.

2

- Serving fake halal food to Plaintiff caused him two mild heart attacks.  Nathanial and the dietician "refusing to allow Crump to eat kosher meals during fast as the Jews do during Passover, making Crump forfeit his religious beliefs and then FORCING Crump to participate in the Jewish holiday under threat caused Crump thoughts of suicide, extreme depression, anxiety." *Id*.

- "The universally accepted Muslim diet for inmates is kosher.  Defendants served Crump non halal, non kosher during Ramadan then forced him to fast during Jewish Passover under threat." *Id*. at 6.

- Defendants officially prefer the Jewish faith over Muslims.  Defendants do not provide halal diets and "refer to kosher as ONLY a Jewish diet.  Muslims on kosher diet are FORCED to participate in Passover, but Jews are not forced to participate in Ramadan.  Muslims are forced from kosher diet, threatened and intimidated.  Jews are not." *Id*.

- Defendants changed Plaintiff's diet "from kosher to a non halal diet high in sodium. Crump was on many medications and 3 blood pressure medications.  By changing Crump's diet without his knowledge of the high sodium this caused Crump two mild heart attacks." *Id*. at 7.  Then when Plaintiff was forced to fast during Passover, Plaintiff "has to maintain a certain amount of food due to the many medications he takes.  This caused severe stomach cramps, migraines, muscle cramps and loss of physical movement, exhaustion." *Id*.

- Defendants denied Plaintiff kosher meals during Ramadan.  They "[p]rovided kosher meals to Jews during Passover fast, yet told Crump he would not be provided kosher trays during the Ramadan fast." *Id.* at 8.

The AC includes eighteen (18) counts: (1) violation of the First Amendment Free Exercise Clause; (2) violation of the Establishment Clause;  (3) violation of the Equal Protection Clause; (4) violation of RFRA; (5) violation of RLUIPA; (6) violation of 42 U.S.C. § 2000bb 1 to 4; (7) violation of 42 U.S.C. § 2000cc 1 to 5; (8) violation of the Fourteenth Amendment; (9) Monell claim; (10) supervisor liability claim; (11) violation of 42 U.S.C. § 1985 (conspiracy to commit fraud); (12) violation of 42 U.S.C. § 1986 (failure to intervene); (13) unjust enrichment; (14) intentional and negligent infliction of emotional distress; (15) discrimination; (16) violation of right to free speech under the First Amendment; (17) the Fourteenth Amendment "reprehensible conduct" entitling Plaintiff to punitive damages; and (18) claim for treble damages under 15 U.S.C. § 1117(a). *Id*. at 5-8.

Plaintiff names the following defendants: the Summit Company, contracted food service provider at the JCADC; Sheriff Calvin Hayden; Robb Nathanial, Kitchen Supervisor, Summit Company; Dietician with Summit Company; Lt. Brian Zeeff, Kitchen Supervisor, Johnson County Sheriff's Department; and the Johnson County Board of Commissioners.  Plaintiff seeks relief in the form of over $3 million in compensatory damages and $9.7 million in punitive damages. *Id*. at 9.

## II.  The *Martinez* Report

The *Martinez* Report addresses the allegations contained in Plaintiff's original Complaint.  Plaintiff's allegations in the AC are somewhat different, but some of the Report is relevant.

The Report (Doc. 20) demonstrates that Plaintiff was asked about his religion and diet upon booking on July 4, 2023, and again two days later.  In each instance, he stated that he was a Christian and had no limited diet.  (Doc. 20, at 1; Doc. 17-2, at 1; Doc. 17-2, at 2.)  This is

consistent with Plaintiff's responses the three previous times he was booked into the JCADC. On August 29, 2022, Plaintiff stated at booking that he did not participate in a religion. (Doc. 17-3, at 2.) On December 29, 2022, he again denied participation in any religion. (Doc. 17-3, at 3.) On April 16, 2023, he again said he did not participate in a religion, and at the time of his classification interview, he stated that he was Christian. (Doc. 17-3, at 4, 5.)

Yet Plaintiff stated that he converted to Islam in May of 2021 on a Request for Accommodation of Religious Practices that he submitted on January 31, 2024. (Doc. 20, at 1; Doc. 17-3, at 1.)

JCADC has a policy titled "Special Diet Guidelines." (Doc. 17-4.) An inmate must request a special diet through the kiosk. *Id*. at 4. For vegan/vegetarian diets, the inmate is given the "Special Diet Rules Sheet" to review and sign. *Id*. For a kosher diet, if the inmate stated at booking or classification that their preferred religion has a kosher limitation, the inmate is given the "Request for Accommodation of Religious Practices" form and "Special Diet Rule Sheet" to fill out. Once the completed forms are received, the diet is approved. *Id*.

If the inmate did not specify their religious preference at booking or classification, the inmate is given the "Request for Accommodation of Religious Practices" form and notified that there is a 30-day observation period. Commissary orders are reviewed at the end of the 30-day period for compliance with the requested religious diet, and the inmate is asked if they would still like to be added. *Id.*

Plaintiff submitted a general request on September 14, 2023, stating that he was "changing my religion to Muslim." (Doc. 17-4, at 2.) On September 16, 2023, Plaintiff requested an "ovo vegan" diet. (Doc. 17-4, at 3.) Plaintiff signed a Rules of Special Diet form for a vegan diet on September 18, 2023. (Doc. 17-4, at 5.) The Rules state that there is a 90-day

waiting period to change from one special diet to another.  *Id.*  In addition, the Rules provide that

if the inmate requests "on and off a special diet twice in a year, you will not be allowed on

another special diet for the remainder of your incarceration period."  *Id.*  Plaintiff was approved

to receive the vegan diet on September 19, 2023.  (Doc. 17-4, at 6.)

Then, on October 18, 2024, Plaintiff complained about the protein and portions he

receives on the vegan diet.  (Doc. 17-5, at 1.)  He requested additional portions.  His request was

not granted.  *Id.*  The next day, Plaintiff asked to change from a vegan diet to a kosher diet.

(Doc. 17-5, at 2.)  The initial response was that he did not state on booking that he had a religion

that required a religious diet.  *Id.*  Plaintiff submitted another diet change request the same day

alleging that his statements upon booking were not reliable given the state he was in.  (Doc. 17-6,

at 1.)  A response was sent 11 minutes later saying that he would be placed on the 30-day

observation period.  *Id.*

Eleven days later on October 30, 2023, Plaintiff submitted another request threatening to

sue if he was not placed on a kosher diet by Friday.  *Id*. at 2.  He received a response the next day

stating that because he was currently on a special diet (vegan), he had to wait 90 days per the

policy to request another special diet.  *Id*.

Plaintiff filed a grievance on December 20, 2023, complaining that he was lied to when

he was told he had to wait 90 days.  *Id*. at 4.  The response explained that the 90-day waiting

period is included in the policy and applies to all inmates.  *Id.*  Plaintiff responded that he

switched to a vegan diet to participate in Ramadan in October.  (Ramadan was not in October of

2023.)  The 90-day waiting period was extended by two weeks because Plaintiff ordered and

received non-kosher items from the commissary on December 29, 2023.  *Id*. at 5.  This was in

accordance with the policy.  On January 31, 2024, the accommodation Plaintiff requested for his

Islamic faith was a kosher diet.  (Doc. 17-3, at 1.)  Plaintiff began receiving a kosher diet on February 17, 2024.

In the meantime, Plaintiff asked to participate in Ramadan.  He signed the special diet rules for the Ramadan observation on January 20, 2024.  (Doc. 17-8, at 2.)  According to JCADC policy, the Ramadan observation is a temporary diet in which any person can participate upon request regardless of the diet they normally receive.  (Doc. 20, at 2.)

Ramadan began on March 10, 2024.  Plaintiff complained on March 11, 2024, that he did not receive enough calories for breakfast and that the food was not kosher.  (Doc. 17-10, at 2.)  On March 12, he submitted a food service request stating that he was on a kosher diet and should not receive non-kosher items.  *Id.* at 3.  He was informed that Ramadan is not a kosher tradition and that there were items in the Ramadan diet that were not necessarily kosher but they did meet the requirements for a Ramadan meal.  Plaintiff then asked to be removed from the Ramadan diet.  *Id*. at 6.

Plaintiff submitted a Food Service Request on April 6, 2024, stating, "I asked to have my appropriate kosher diet during Ramadan.  Kitchen, Dietician, JCADC Administrators refuses to make adjustments and I suffered two mild heart attacks. . . . The Ramadan needs changed to kosher meals."  (Doc. 18-2, at 1.)  Nathaniel responded in part, "You haven't been receiving Ramadan meals for a few weeks.  You were removed from the Ramadan list by your own request." *Id.*

## III. DISCUSSION

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *McKinley v. Maddox*, 493 F. App'x 928 (10th Cir.

2012); *Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205 (10th Cir. 1999).  In order to state a constitutional denial of free exercise of religion claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs."  *Gallagher*, 587 F.3d at 1069.  In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."  *Id.* at 1070.

The AC fails in the first instance to state a claim for violation of the First Amendment because it does not describe Plaintiff's religious beliefs or allege that those beliefs are sincerely held.  Next, the AC does not describe in a coherent way how the defendants substantially burdened those beliefs.  It is not clear how the defendants allegedly forced Plaintiff to participate in Passover.  Moreover, it is unclear whether Plaintiff is claiming that he should have received both the Ramadan meals and the regular kosher meals or some combination of the two.  Finally, the AC does not credibly assert that the defendants *intentionally* interfered with his right to exercise his beliefs.  Each of these elements must be addressed for Plaintiff to state an actionable claim.

Based on the AC and the Report, Plaintiff did not initially inform anyone that he was a Muslim.  When he did make that claim, he requested a vegan diet.  When that was not satisfactory, he requested a kosher diet.  There is no indication that he ever requested a halal diet, whether or not it was available.  While receiving the kosher diet, he asked to participate in the Ramadan meals.  He then objected when some of the foods in the Ramadan diet were not kosher.  Based on the AC and the Report, Plaintiff's requests or complaints were addressed and if possible accommodated, within the facility's pre-established dietary rules and procedures, of which Plaintiff was informed as demonstrated by his signature with each change of diet.  There is no indication of intentional interference with Plaintiff's sincerely held religious beliefs.

As for the AC's 17 other counts, each are supported, if at all, by the same conclusory and confusing factual allegations outlined above.  Plaintiff is given the opportunity to show cause why these claims should not be dismissed.

Finally, Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff has failed to allege a credible physical injury.  Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  In *Searles v. Van Bebber,* 251 F.3d 869 (10th Cir. 2001), the Tenth Circuit specifically held that the limitation on recovery in § 1997(e)(e) applied to a First Amendment claim that prison officials denied the plaintiff a kosher diet and to claims for actual or compensatory damages.  *Id.* at 879, 881; *see also Sisney v. Reisch,* 674 F.3d 839, 843 (8th Cir. 2012).  Plaintiff's assertion that he suffered two heart attacks as a result of eating high sodium food for a few days is not plausible and not supported by the medical records submitted with the Report.

Plaintiff also claims that the defendants' actions caused him "thoughts of suicide, extreme depression, anxiety," as well as "severe stomach cramps, migraines, muscle cramps and loss of physical movement, exhaustion."  (Doc. 28, at 5, 7.)   Such allegations are not sufficient to meet the "physical injury" requirement of § 1997e(e).  *Hall v. Elbe*, No. 18-CV-01056-PAB-NRN, 2022 WL 16855691, at *13 (D. Colo. Nov. 9, 2022), citing *see, e.g., Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming *sua sponte* dismissal with prejudice despite prisoner's affidavit stating that he suffered weight loss, appetite loss, and insomnia after disclosure of his medical status because the language and purpose of § 1997e(e) "preclude[s] reliance on the somatic manifestations of emotional distress"); *Cooksey v. Hennessey*, 2007 WL

2790365, *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as 'a prior showing of physical injury.' "); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 905 (N.D. Cal. 2004) (same); *Cannon v. Burkybile*, 2000 WL 1409852, *6 (N.D. Ill. Sept. 25, 2000) (allegations of headaches, insomnia, stress, and stomach anxiety insufficient to meet the physical injury requirement under § 1997e(e)); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and severe headaches caused by emotional distress not a "physical injury" under the PLRA).

Plaintiff's request for compensatory damages is subject to dismissal.

## IV. Response and/or Amended Complaint Required

The *Martinez* report developed as a means "to ascertain whether there is a factual as well as a legal basis for [a] prisoner's claims." *Gee v. Estes*, 829 F.2d 1005, 1007 (10th Cir. 1987). The report "is treated like an affidavit, and the court is not authorized to accept the factual findings of the prison investigation when the plaintiff has presented conflicting evidence." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citing *Sampley v. Ruettgers*, 704 F.2d 491, 493 n. 3 (10th Cir. 1983)). Thus, at this point in the proceedings the Court does not use the Report to resolve conflicts of fact. *See Swoboda v. Duback*, 992 F.2d 286, 290 (10th Cir. 1993) ("In determining whether a plaintiff has stated a claim, the district court may not look to the Martinez report, or any other pleading outside the complaint itself, to refute facts specifically pled by a plaintiff, or to resolve factual disputes.").

In light of the Report, the Court is considering dismissal of this matter for failure to state a claim. Plaintiff will be given an opportunity to respond to the Report and to show good cause why dismissal should not be entered. Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies

discussed herein.[1]  Failure to respond by the Court's deadline may result in dismissal of this action without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted until **October 9, 2024,** in which to respond to the *Martinez* Report and to show good cause why this action should not be dismissed.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **October 9, 2024**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED.**

**Dated September 9, 2024, in Kansas City, Kansas.**


**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

---

[1] To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint. *See* Fed. R. Civ. P. 15.  An amended complaint is not simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court.  It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.  Plaintiff must write the number of this case (24-3046-JWL) at the top of the first page of his amended complaint, and he must name every defendant in the caption of the amended complaint. *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the amended complaint, where he must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances.  Plaintiff must allege sufficient additional facts to show a federal constitutional violation.