## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

STEVEN CRUMP,

      **Plaintiff,**

      v.                      **CASE NO.  24-3046-JWL**

JOHNSON COUNTY BOARD
OF COMMISSIONERS, et al.,

      **Defendants.**

### MEMORANDUM AND ORDER

Plaintiff brings this pro se case under 42 U.S.C. § 1983.  The Court granted Plaintiff leave to proceed in forma pauperis.  Plaintiff is detained at the Johnson County Adult Detention Center in Olathe, Kansas ("JCADC").

The Court entered a Memorandum and Order ("M&O") (Doc. 9) finding that the proper processing of Plaintiff's claims could not be achieved without additional information from appropriate officials of the JCADC.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978); *see also Hall v. Bellmon*, 935 F.2d 1106 (10th Cir. 1991).  The Court ordered JCADC officials to prepare and file a *Martinez* Report, stating that "[o]nce the report has been received, the Court can properly screen Plaintiff's claims under 28 U.S.C. § 1915A." (Doc. 9, at 6.)  The *Martinez* Report (Docs. 17, 18, 20) (the "Report") was filed, and Plaintiff filed an Amended Complaint ("AC") (Doc. 28).  The Court screened the AC and entered a Memorandum and Order to Show Cause ("MOSC") giving Plaintiff a chance to show cause why his AC should not be dismissed for failure to state a claim.  (Doc. 33.)  Plaintiff's Response to the MOSC and affidavit are before the Court. (Docs. 40 and 41.)

## I.  Nature of the Matter before the Court

The AC asserts that the defendants denied Plaintiff kosher meals during Ramadan and Passover, do not provide halal meals for Muslims, and served sack lunches of non-approved halal food.  (AC, Doc. 28, at 2.)  The AC further alleges that the defendants forced Plaintiff to participate in Passover "by threat and force."  *Id*.  Plaintiff claims that the Sheriff's Office and Summit Company "maintain[ ] an unconstitutional policy that denied Crump his religious freedoms which forced Crump not to participate in Ramadan due to health issues related to the non halal food served and then forced to FAST for a month during Passover harming Crump."  *Id*.

Plaintiff alleges that Defendant Nathanial denied him a kosher meal during Ramadan, telling him that he could either stay on the kosher diet or celebrate Ramadan.  Nathanial allegedly forced Plaintiff to fast during Passover.  *Id*. at 3.  According to Plaintiff, Nathanial told him that he would recommend Plaintiff's permanent removal from the kosher diet if Plaintiff chose not to accept the meals being served.  *Id.*

The AC further asserts that the deprivation of Plaintiff's religious freedoms "caused him actual physical injury and to choose between religious practices or physical injury."  *Id*. at 4.

Other allegations contained in the AC include:

- Summit Company intentionally tried to pass off non-halal food as halal and then provided a fake menu of food that was not given to inmates.  Plaintiff was given the same sack lunch as "intake."  *Id.* at 5.

- Defendants Zeeff, Hayden, and other unnamed "defendants" refused to intervene in Summit's fraud.  *Id.*

- Summit knowingly provided fake halal food and overcharged the citizens of Johnson County for it. "This unjust enrichment was gained at the expense of Steven Crump's health in which he almost died." *Id.*

- Serving fake halal food to Plaintiff caused him two mild heart attacks. Nathanial and the dietician "refusing to allow Crump to eat kosher meals during fast as the Jews do during Passover, making Crump forfeit his religious beliefs and then FORCING Crump to participate in the Jewish holiday under threat caused Crump thoughts of suicide, extreme depression, anxiety." *Id.*

- "The universally accepted Muslim diet for inmates is kosher. Defendants served Crump non halal, non kosher during Ramadan then forced him to fast during Jewish Passover under threat." *Id.* at 6.

- Defendants officially prefer the Jewish faith over Muslims. Defendants do not provide halal diets and "refer to kosher as ONLY a Jewish diet. Muslims on kosher diet are FORCED to participate in Passover, but Jews are not forced to participate in Ramadan. Muslims are forced from kosher diet, threatened and intimidated. Jews are not." *Id.*

- Defendants changed Plaintiff's diet "from kosher to a non halal diet high in sodium. Crump was on many medications and 3 blood pressure medications. By changing Crump's diet without his knowledge of the high sodium this caused Crump two mild heart attacks." *Id.* at 7. Then when Plaintiff was forced to fast during Passover, Plaintiff "has to maintain a certain amount of food due to the many medications he takes. This caused severe stomach cramps, migraines, muscle cramps and loss of physical movement, exhaustion." *Id.*

- Defendants denied Plaintiff kosher meals during Ramadan.  They "[p]rovided kosher meals to Jews during Passover fast, yet told Crump he would not be provided kosher trays during the Ramadan fast."  *Id.* at 8.

The AC includes eighteen (18) counts: (1) violation of the First Amendment Free Exercise Clause; (2) violation of the Establishment Clause;  (3) violation of the Equal Protection Clause; (4) violation of RFRA; (5) violation of RLUIPA; (6) violation of 42 U.S.C. § 2000bb 1 to 4; (7) violation of 42 U.S.C. § 2000cc 1 to 5; (8) violation of the Fourteenth Amendment; (9) *Monell* claim; (10) supervisor liability claim; (11) violation of 42 U.S.C. § 1985; (12) violation of 42 U.S.C. § 1986; (13) unjust enrichment; (14) intentional and negligent infliction of emotional distress; (15) discrimination; (16) violation of right to free speech under the First Amendment; (17) the Fourteenth Amendment "reprehensive conduct" entitling Plaintiff to punitive damages; and (18) claim for treble damages under 15 U.S.C. § 1117(a).  *Id.* at 5-8.

Plaintiff names the following defendants: the Summit Company, contracted food service provider at the JCADC; Sheriff Calvin Hayden; Robb Nathanial, Kitchen Supervisor, Summit Company; Dietician with Summit Company; Lt. Brian Zeeff, Kitchen Supervisor, Johnson County Sheriff's Department; and the Johnson County Board of Commissioners.  Plaintiff seeks relief in the form of over $3 million in compensatory damages and $9.7 million in punitive damages.  *Id.* at 9.

## II.  The *Martinez* Report

The *Martinez* Report addresses the allegations contained in Plaintiff's original Complaint. Plaintiff's allegations in the AC are somewhat different, but some of the Report is relevant.

The Report (Doc. 20) demonstrates that Plaintiff was asked about his religion and diet upon booking on July 4, 2023, and again two days later.  In each instance, he stated that he was a

Christian and had no limited diet.  (Doc. 20, at 1; Doc. 17-2, at 1; Doc. 17-2, at 2.)  This is consistent with Plaintiff's responses the three previous times he was booked into the JCADC.  On August 29, 2022, Plaintiff stated at booking that he did not participate in a religion.  (Doc. 17-3, at 2.)  On December 29, 2022, he again denied participation in any religion.  (Doc. 17-3, at 3.)  On April 16, 2023, he again said he did not participate in a religion, and at the time of his classification interview, he stated that he was Christian.  (Doc. 17-3, at 4, 5.)

Yet Plaintiff stated that he converted to Islam in May of 2021 on a Request for Accommodation of Religious Practices that he submitted on January 31, 2024.  (Doc. 20, at 1; Doc. 17-3, at 1.)

JCADC has a policy titled "Special Diet Guidelines."  (Doc. 17-4.)  An inmate must request a special diet through the kiosk.  *Id.* at 4.  For vegan/vegetarian diets, the inmate is given the "Special Diet Rules Sheet" to review and sign.  *Id.*  For a kosher diet, if the inmate stated at booking or classification that their preferred religion has a kosher limitation, the inmate is given the "Request for Accommodation of Religious Practices" form and "Special Diet Rule Sheet" to fill out.  Once the completed forms are received, the diet is approved.  *Id.*

If the inmate did not specify their religious preference at booking or classification, the inmate is given the "Request for Accommodation of Religious Practices" form and notified that there is a 30-day observation period.  Commissary orders are reviewed at the end of the 30-day period for compliance with the requested religious diet, and the inmate is asked if they would still like to be added.  *Id.*

Plaintiff submitted a general request on September 14, 2023, stating that he was "changing my religion to Muslim."  (Doc. 17-4, at 2.)  On September 16, 2023, Plaintiff requested an "ovo vegan" diet.  (Doc. 17-4, at 3.)  Plaintiff signed a Rules of Special Diet form for a vegan diet on

September 18, 2023. (Doc. 17-4, at 5.) The Rules state that there is a 90-day waiting period to change from one special diet to another. *Id.* In addition, the Rules provide that if the inmate requests "on and off a special diet twice in a year, you will not be allowed on another special diet for the remainder of your incarceration period." *Id.* Plaintiff was approved to receive the vegan diet on September 19, 2023. (Doc. 17-4, at 6.)

Then, on October 18, 2024, Plaintiff complained about the protein and portions he receives on the vegan diet. (Doc. 17-5, at 1.) He requested additional portions. His request was not granted. *Id.* The next day, Plaintiff asked to change from a vegan diet to a kosher diet. (Doc. 17-5, at 2.) The initial response was that he did not state on booking that he had a religion that required a religious diet. *Id.* Plaintiff submitted another diet change request the same day alleging that his statements upon booking were not reliable given the state he was in. (Doc. 17-6, at 1.) A response was sent 11 minutes later saying that he would be placed on the 30-day observation period. *Id.*

Eleven days later on October 30, 2023, Plaintiff submitted another request threatening to sue if he was not placed on a kosher diet by Friday. *Id.* at 2. He received a response the next day stating that because he was currently on a special diet (vegan), he had to wait 90 days per the policy to request another special diet. *Id.*

Plaintiff filed a grievance on December 20, 2023, complaining that he was lied to when he was told he had to wait 90 days. *Id.* at 4. The response explained that the 90-day waiting period is included in the policy and applies to all inmates. *Id.* Plaintiff responded that he switched to a vegan diet to participate in Ramadan in October. (Ramadan was not in October of 2023.) The 90-day waiting period was extended by two weeks because Plaintiff ordered and received non-kosher items from the commissary on December 29, 2023. *Id.* at 5. This was in accordance with the

policy.  On January 31, 2024, the accommodation Plaintiff requested for his Islamic faith was a kosher diet.  (Doc. 17-3, at 1.)  Plaintiff began receiving a kosher diet on February 17, 2024.

In the meantime, Plaintiff asked to participate in Ramadan.  He signed the special diet rules for the Ramadan observation on January 20, 2024.  (Doc. 17-8, at 2.)  According to JCADC policy, the Ramadan observation is a temporary diet in which any person can participate upon request regardless of the diet they normally receive.  (Doc. 20, at 2.)

Ramadan began on March 10, 2024.  Plaintiff complained on March 11, 2024, that he did not receive enough calories for breakfast and that the food was not kosher.  (Doc. 17-10, at 2.)  On March 12, he submitted a food service request stating that he was on a kosher diet and should not receive non-kosher items.  *Id*. at 3.  He was informed that Ramadan is not a kosher tradition and that there were items in the Ramadan diet that were not necessarily kosher, but they did meet the requirements for a Ramadan meal.  Plaintiff then asked to be removed from the Ramadan diet.  *Id*. at 6.

Plaintiff submitted a Food Service Request on April 6, 2024, stating, "I asked to have my appropriate kosher diet during Ramadan.  Kitchen, Dietician, JCADC Administrators refuses to make adjustments and I suffered two mild heart attacks. . . . The Ramadan needs changed to kosher meals."  (Doc. 18-2, at 1.)  Nathaniel responded in part, "You haven't been receiving Ramadan meals for a few weeks.  You were removed from the Ramadan list by your own request."  *Id*.

## III.  DISCUSSION

### A.  Constitutional Free Exercise Claim (Count I)

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *McKinley v. Maddox*, 493 F. App'x 928 (10th Cir. 2012);

*Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205 (10th Cir. 1999).  In order to state a constitutional denial of free exercise of religion claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs."  *Gallagher*, 587 F.3d at 1069.  In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."  *Id.* at 1070.  "If the prisoner satisfies this initial step, 'defendants may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley*, 493 F. App'x at 932 (citation omitted).  The court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.*  The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (unpublished) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316 (10th Cir. 2010)).  In *Strope*, the Tenth Circuit reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id.* at 1320–21; *id.* at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim).  We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Id.* (citing *Abdulhaseeb*, 600 F.3d at 1321).  In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

### 1.  Sincerely-held Religious Beliefs

The MOSC found that the AC failed in the first instance to state a claim for violation of the First Amendment because it does not describe Plaintiff's religious beliefs or allege that those beliefs are sincerely held.  Plaintiff attempted to address this concern in his Response, stating, "Since 2021 Steven Crump has held a strong religious belief in the Nation of Islam as a practicing Muslim."  (Doc. 41, at 2.)

The Tenth Circuit has instructed that a plaintiff "has adequately stated a First Amendment free exercise claim if the Complaint alleges that Defendants substantially burdened the exercise of his [sincerely held] belief." *Williams v. Wilkinson*, 645 F. App'x 692, 704 (10th Cir. 2016) (unpublished).  The Court may not assess the sincerity of the plaintiff's religious beliefs at the pleading stage.  *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007).

### 2.  Substantial Burden

The MOSC found that the AC did not describe in a coherent way how the defendants substantially burdened Plaintiff's religious beliefs.  In his Response, Plaintiff asserts that he was forced to participate in Passover.  He was receiving the kosher diet as a Muslim because the "universally accepted Muslim diet for inmates is kosher."  During Passover, the regular kosher diet was altered to include unleavened bread and grape juice.  Plaintiff wanted to receive the usual kosher meals since he is not Jewish but alleges that he was told he would either accept the Passover trays or be removed from the kosher diet.  (Doc. 41, at 6-7.)  He alleges that the defendants could and should have continued to serve him the regular pre-packaged kosher meals while serving Jewish inmates the Passover trays.

As for Ramadan, Plaintiff states that he assumed the Ramadan meals would be pre-packaged meals like the regular kosher meals.  Instead, he alleges that he was served the same sack lunches given to intake inmates.  He alleges that the meat in the sack lunches is labeled "Not for human consumption."  (Doc. 41, at 5.)  Plaintiff further asserts that "nothing about the sack lunch was Halal nor kosher other than the high sodium potato chips." *Id.*  The items in the sack lunches came in Ziploc bags, and "[e]verything was contaminated, unclean and unfit for the Great Celebration of Ramadan." *Id.*

Plaintiff has provided a sufficient explanation of how he believes the defendants substantially burdened his religious beliefs at this initial screening stage.

### 3.  Intentional Interference

The MOSC found that the AC does not credibly assert that the defendants *intentionally* interfered with his right to exercise his beliefs.  Even though Plaintiff may have been a Muslim, he does not dispute that he did not initially inform anyone at the JCADC of his religious beliefs.  When he did so, he requested a vegan diet.  When that was not satisfactory, he requested a kosher diet.  The MOSC found that there was no indication that Plaintiff ever requested a halal diet, whether or not it was available.  Plaintiff disputes that finding, stating that he asked various staff persons about halal meals and was told the JCADC did not provide them.

While receiving the kosher diet, he asked to participate in the Ramadan meals.  He then objected when some of the foods in the Ramadan diet were not kosher.  Based on the AC and the Report, Plaintiff's requests or complaints were addressed and if possible accommodated, within the facility's pre-established dietary rules and procedures of which Plaintiff was informed as demonstrated by his signature with each change of diet.  The Court questions whether Plaintiff can

establish intentional interference with his religious beliefs but at this screening stage finds that he has sufficiently alleged intentional interference.

Count I survives screening.

**B. Claim for Compensatory Damages**

The MOSC found that Plaintiff's request for compensatory damages is barred by 42 U.S.C. § 1997e(e), because Plaintiff failed to allege a credible physical injury. Section 1997e(e) provides in pertinent part that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In *Searles v. Van Bebber,* 251 F.3d 869 (10th Cir. 2001), the Tenth Circuit specifically held that the limitation on recovery in § 1997(e)(e) applied to a First Amendment claim that prison officials denied the plaintiff a kosher diet and to claims for actual or compensatory damages. *Id.* at 879, 881; *see also Sisney v. Reisch,* 674 F.3d 839, 843 (8th Cir. 2012). The Court is skeptical of Plaintiff's assertion that he suffered two heart attacks as a result of eating high sodium food for a few days when he was given the sack lunches for Ramadan but determines his allegation is sufficient at this stage to avoid dismissal of his claim for compensatory damages.

Plaintiff also claims that the defendants' actions caused him "thoughts of suicide, extreme depression, anxiety," as well as "severe stomach cramps, migraines, muscle cramps and loss of physical movement, exhaustion." (Doc. 28, at 5, 7.) Such allegations are not sufficient to meet the "physical injury" requirement of § 1997e(e). *Hall v. Elbe,* No. 18-CV-01056-PAB-NRN, 2022 WL 16855691, at *13 (D. Colo. Nov. 9, 2022), citing *see, e.g., Davis v. District of Columbia,* 158 F.3d 1342, 1349 (D.C. Cir. 1998) (affirming *sua sponte* dismissal with prejudice despite prisoner's affidavit stating that he suffered weight loss, appetite loss, and insomnia after disclosure of his

medical status because the language and purpose of § 1997e(e) "preclude[s] reliance on the somatic manifestations of emotional distress"); *Cooksey v. Hennessey*, 2007 WL 2790365, *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as 'a prior showing of physical injury.' "); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 905 (N.D. Cal. 2004) (same); *Cannon v. Burkybile*, 2000 WL 1409852, *6 (N.D. Ill. Sept. 25, 2000) (allegations of headaches, insomnia, stress, and stomach anxiety insufficient to meet the physical injury requirement under § 1997e(e)); *Cain v. Virginia*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and severe headaches caused by emotional distress not a "physical injury" under the PLRA).

In his Response, Plaintiff cites cases finding that loss of First Amendment freedoms constitutes "irreparable injury." (Doc. 41, at 8-9.)  These cases do not help him overcome the bar of 42 U.S.C. § 1997e(e).  While the injury resulting from loss of First Amendment freedoms may be irreparable, it is not physical.

### C.  Other Counts

The MOSC found that the AC's 17 other counts were supported, if at all, by the same conclusory and confusing factual allegations as Plaintiff's free exercise claim.  Plaintiff was given the opportunity to show cause why these claims should not be dismissed. In his Response, Plaintiff's only attempt to address these counts is as follows: "As we will see the Defendants have willfully violated every Religious Freedom that is constitutionally protected.  The RFRA and the RLUIPA cover majority of the violations in summary, but the specific violations are covered within the 18 claims filed."  (Doc. 41, at 12.)  Plaintiff makes no attempt to specifically support his RFRA and RLUIPA counts or his counts for violation of the Equal Protection Clause; violation of the Fourteenth Amendment; violation of 42 U.S.C. § 1985; violation of 42 U.S.C. § 1986; unjust

enrichment; intentional and negligent infliction of emotional distress; discrimination; the Fourteenth Amendment "reprehensible conduct" entitling Plaintiff to punitive damages; and claim for treble damages under 15 U.S.C. § 1117(a).

As discussed above, Count I of the AC survives screening. The remaining counts are discussed below.

### 1. Establishment Clause (Count II)

The Establishment Clause prohibits prison officials from favoring particular religions. *See Cruz v. Beto*, 405 U.S. 319, 321-22 (1972). Prisons must afford an inmate of a minority religion "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Washington v. Harper*, 494 U.S. 210, 223-24 (1990). This does not mean "that every religious sect or group within a prison—however few in number—must have identical facilities or personnel." *Cruz,* 405 U.S. at 332 n. 2.

Plaintiff has not alleged sufficient facts showing that Defendants are biased against the Muslim religion, or that they are intentionally denying Plaintiff a reasonable opportunity to pursue his faith comparable to that afforded inmates of other religions. He only includes the conclusory assertion that Defendants officially prefer the Jewish faith over Muslims. Count II is dismissed.

### 2. Equal Protection (Count III)

The Equal Protection Clause requires that "all persons similarly circumstanced shall be treated alike." *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920). *Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir.), *cert. denied*, 549 U.S. 1059 (2006) ("Equal protection is essentially a direction that all persons similarly situated should be treated alike."); *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 792 (10th Cir. 2005). An equal protection violation occurs when the government treats someone differently from another person who is

similarly situated, without adequate justification for the difference in treatment. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1118 (10th Cir. 1991). A plaintiff "who alleges an equal protection violation has the burden of proving the existence of purposeful discrimination" causing an adverse effect. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987). Such plaintiff must present specific facts which demonstrate that a "discriminatory purpose" was a motivating factor in the disparate treatment attacked in the complaint. *Watson v. City of Kansas City, Kan.*, 857 F.2d 690, 694 (10th Cir. 1988); *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979).

"When, as here, a claim involves a suspect classification or a deprivation of a fundamental right such as free exercise of religion, strict scrutiny applies." *Ashaheed v. Currington*, 7 F.4th 1236, 1250 (10th Cir. 2021) (citing *see Fisher v. Univ. of Tex. at Austin*, 570 U.S. 297, 310 (2013); *Save Palisade FruitLands v. Todd*, 279 F.3d 1204, 1210 (10th Cir. 2002).

Plaintiff's equal protection claim survives screening. He alleges facts suggesting that he was treated differently than other JCADC inmates due to his religion and without adequate justification.

### 3. RFRA (Counts IV and VI)

The Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb et seq., states that a government may not substantially burden a person's exercise of religion unless it demonstrates that doing so "(1) is in furtherance of a compelling government interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb-1. However, the U.S. Supreme Court found RFRA unconstitutional as applied to states and state agencies. *See City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997). Hence, RFRA only applies to federal prisons and is not applicable here. Counts IV and VI are dismissed.

14

#### 4. RLUIPA (Counts V and VII)

Section 3 of the Religious Land Use and Institutionalized Persons Act ("RLUIPA") provides:

> No government shall impose a substantial burden on the religious exercise of a person ... confined to an institution ... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling government interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).

To state a claim under RLUIPA, a plaintiff must allege that he "wishes to engage in (1) a religious exercise (2) motivated by a sincerely held belief, which exercise (3) is subject to a substantial burden imposed by the government." *Abdulhaseeb*, 600 F.3d at 1312. At the pleading stage, the plaintiff is "required to allege only that his request to eat a [halal] diet was motivated by a sincerely held religious belief and that his exercise of that belief has been substantially burdened by the government." *Smith v. Williams*, No. 20-CV-00841-WJM-NYW, 2021 WL 4947353, at *12 (D. Colo. Oct. 13, 2021), *report and recommendation adopted sub nom. Smith v. Crockett*, No. 20-CV-0841-WJM-NYW, 2021 WL 5736434 (D. Colo. Dec. 2, 2021) (quoting *Williams v. Wilkinson, 645 F. App'x 692,* 699 (10th Cir. 2016) (unpublished)).

However, recovery under the RLUIPA is limited to official capacity claims for equitable relief. *See Sossamon v. Texas*, 563 U.S. 277, 279 (2011) (holding Eleventh Amendment immunity bars RLUIPA claims for money damages); *Stewart v. Beach*, 701 F.3d 1322, 1335 (10th Cir. 2012) (noting RLUIPA does not permit individual capacity claims). "The only relief available . . . under the RLUIPA is declaratory and injunctive relief against defendants in their official capacities."

*Warner v. Patterson*, 534 F. App'x 785, 788 (10ᵗʰ Cir. 2013) (unpublished). The AC does not seek equitable relief, making Plaintiff's RLUIPA claim subject to dismissal as this case proceeds to the next stage.

### 5. Fourteenth Amendment Deliberate Indifference (Count VIII)

Plaintiff claims in Count VIII that Defendants Nathanial and the Summit Dietician were deliberately indifferent to his serious medical needs when they "changed his diet from kosher to a non halal diet high in sodium." (AC, Doc. 28, at 7.) He states that he was on "many" medications "and 3 blood pressure medications" and changing his diet "without his knowledge of the high sodium" caused him "two mild heart attacks." *Id.* He further alleges that forcing him to fast during Passover while he "has to maintain a certain amount of food due to the many medications he takes" caused severe stomach cramps, migraines, muscle cramps, loss of physical movement and exhaustion. *Id.*

The United States Supreme Court has held that an inmate may advance a claim of cruel and unusual punishment based on "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Boyett v. County of Washington*, 282 F. App'x 667, 672 (10th Cir. 2008) (citing *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)). The "deliberate indifference" standard has two components: "an objective component requiring that the pain or deprivation be sufficiently serious; and a subjective component requiring that [prison] officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991); *Martinez v. Garden*, 430 F.3d 1302, 1304 (10ᵗʰ Cir. 2005).

A medical need is sufficiently serious "if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* at 990 (citation omitted). The "negligent failure to provide

adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

Plaintiff must also satisfy the subjective prong. The Supreme Court has insisted upon actual knowledge: "the official must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and he must also draw the inference*." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994) (emphasis added). "A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

Plaintiff asserts a serious medical need but has not alleged that Defendants Nathanial and the Summit Dietician had the requisite state of mind. Moreover, there is no indication in the AC that either defendant to this count knew that changing Plaintiff's diet in response to his requests could cause him serious harm. Plaintiff does not allege that he was on a doctor-ordered special diet that might have allowed dietary officials to draw the inference that changing his diet could create a risk of serious harm.

Count VIII is dismissed for failure to state an actionable constitutional claim.

### 6. *Monell* Claim (Count IX)

Local governing bodies can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Soc. Servs. of N.Y.*,

436 U.S. 658, 690 (1978) (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

To state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible "(1) that a municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). The plaintiff must further show that "the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citation omitted).

Plaintiff names Sheriff Hayden and the Summit Company as defendants to this count. (*See* AC, Doc. 28, at 7.) Neither are municipal bodies subject to liability pursuant to *Monell*. Therefore, Count IX is dismissed.

### 7. Supervisor Liability (Count X)

It appears that Plaintiff is asserting vicarious liability for supervisory defendants in Count X. An official's liability under § 1983 may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each

Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 n.4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995).  To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation.  *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988).  "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

Because there is no vicarious liability under § 1983, Count X is dismissed.

### 8.  42 U.S.C. § 1985 (Count XI)

To state a claim for relief under 42 U.S.C. § 1985(3), Plaintiff must allege facts to show: (1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting from the conspiracy.  *Griffin v. Breckenridge*, 403 U.S. 88, 102– 03 (1971).  The Tenth Circuit has clarified that § 1985(3) "does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"   *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (quoting *Griffin*, 403 U.S. at 102).

Pleading the first element, a conspiracy, requires the allegation of "specific facts showing an agreement and concerted action among the defendants." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  Plaintiff fails to allege facts showing either an agreement or concerted action.  Plaintiff asserts in Count XI that Summit and its employees "intentionally tried to pass off non halal food as halal food and then provided a fake menu of food that was not given to inmates."  (AC, Doc. 28, at 5.)  Even though Plaintiff's allegations are accepted as true on initial

19

review, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level. . . .." *Twombly*, 550 U.S. at 555.  Plaintiff alleges only a conclusory and speculative claim of conspiracy with no supporting factual allegations.  Count XI fails to state a viable claim for relief under 42 U.S.C. § 1985(3).  *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) (per curiam) ("Conclusory allegations of conspiracy are insufficient to state a valid § 1983 claim.").

Count XI is dismissed.

### 9.  42 U.S.C. § 1986 (Count XII)

A claim under § 1986 is a claim against a person who has knowledge of a conspiracy under § 1985.  42 U.S.C. § 1986 ("Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured ....").  Because Plaintiff has not adequately asserted a claim pursuant to 42 U.S.C. § 1985, he has also failed to adequately assert a claim pursuant to § 1986.  Count XII is dismissed.

### 10. Unjust Enrichment (Count XIII)

Under Kanas law, an unjust enrichment claim consists of three elements: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *J.W. Thompson Co. v. Welles Products Corp.,* 758 P.2d 738, 745 (Kan. 1988).

Plaintiff makes no effort to plead the elements of an unjust enrichment claim.  He merely makes the unsupported assertion that Summit knowingly provided fake halal food and overcharged the citizens of Johnson County for it, referring to this as unjust enrichment.  Further, it is

questionable whether Plaintiff has standing to bring this claim.  Finally, in a § 1983 action, the complaint must specify "the violation of a right secured by the Constitutional and laws of the United States, and . . . that the deprivation was committed by a person acting under color or state law." *Bruner v. Baker*, 506 F.3rd 1021, 1025-26 (10th Cir. 2007).  "[A] violation of state law alone does not give rise to a federal cause of action under § 1983." *Malek v. Haun*, 26 F.3d 1013, 1016 (10th Cir. 1994).  Thus, the allegation that a state statute, state constitution, or state common law was violated states no claim under § 1983.

For these reasons, Count XIII is dismissed.

**11. Intentional Infliction of Emotional Distress (Count XIV)**

Intentional and negligent infliction of emotional distress are also state law claims.  Under Kansas law, an intentional infliction of emotional distress claim has four elements: "(1) conduct of defendant must be intentional or in reckless disregard of the plaintiff, (2) conduct must be extreme and outrageous, (3) there must be a causal connection between the defendant's conduct and the plaintiff's mental distress, and (4) plaintiff's mental distress must be extreme and severe." *Bolden v. PRC Inc.*, 43 F.3d 545, 553 (10th Cir. 1994).  There are two threshold requirements that the Court must determine: (1) whether "the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery"; and (2) whether "the emotional distress suffered by the plaintiff is so extreme the law must intervene because no reasonable person would be expected to endure it." *Id.* (quoting *Roberts v. Saylor*, 637 F.2d 1175, 1179 (Kan. 1981)).

The Court questions whether any defendant's conduct as alleged by Plaintiff was extreme and outrageous enough to permit recovery.  Moreover, the 42 U.S.C. § 1997e(e) bar on compensatory damages without physical injury would apply to this claim, as it does to Plaintiff's

other claims. However, as the Court declines to dismiss Plaintiff's compensatory damages claim at this time, Count XIV survives screening.

### 12. Discrimination (Count XV)

Plaintiff does not state what constitutional provision he relies on in Count XV and provides no explanation in his response to the MOSC. Discrimination claims often fall under the Equal Protection Clause. As discussed above, Plaintiff's equal protection claim survives screening. This count is therefore dismissed as duplicative.

### 13. Free Speech (Count XVI)

Plaintiff alleges that Defendant Nathanial told him that he would be removed from the kosher diet if he continued to grieve the fact that he was being forced to practice the Jewish religion. (AC, Doc. 28, at 5.) Plaintiff asserts that therefore "his voice was silenced." *Id.*

To state a claim for violation of the First Amendment right of free speech, a plaintiff must establish (1) that he/she engaged in constitutionally protected speech, (2) that plaintiff was subjected to some adverse action sufficiently severe as to "chill a person of ordinary firmness" from engaging in the speech, and (3) that the response was substantially motivated by the reaction to the protected speech. *McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010).

Count XVI survives screening.

### 14.  Fourteenth Amendment Reprehensible Conduct/Punitive Damages (XVII)

It appears that Plaintiff intends this count to be a request for punitive damages. Punitive damages "are available only for conduct which is 'shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Plaintiff alleges that

22

at least one defendant, Nathanial, acted with a sufficiently culpable state of mind.  Plaintiff's request for punitive damages is not dismissed at this time.

**15.  15 U.S.C. § 1117(a)/Treble Damages (Count XVIII)**

15 U.S.C. § 1117(a) allows for treble damages for certain trademark violations.  It is not applicable here.  Count XVIII is dismissed.

**IV.  CONCLUSION**

The Court finds that Counts I, III, XIV, XVI, and XVII of the AC survive the screening required by 28 U.S.C. § 1915A(a) and further finds that a responsive pleading is necessary. Because Plaintiff is proceeding in forma pauperis, the Clerk of the Court must undertake service of process under 28 U.S.C. § 1915(d).

**IT IS THEREFORE ORDERED BY THE COURT** that Counts II, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XV, and XVIII of the Amended Complaint are **dismissed** for failure to state a claim.  Counts I, III, XIV, XVI, and XVII of the Amended Complaint survive the Court's screening under 28 U.S.C. § 1915A.

**IT IS FURTHER ORDERED** that the Court directs the Clerk of the Court to prepare and issue waiver of service forms for the defendants pursuant to Fed. R. Civ. P. 4(d) to be served upon the defendants at no cost to Plaintiff.

**IT IS SO ORDERED.**

**Dated December 9, 2024, in Kansas City, Kansas.**


**S/  John W. Lungstrum**
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**