IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

STEVEN CRUMP,

        Plaintiff,

        v.                                     Case No. 24-3046-JAR-RES

JOHNSON COUNTY BOARD OF
COMMISSIONERS, et al.,

        Defendants.

## MEMORANDUM AND ORDER

Plaintiff Steven Crump, proceeding *pro se* and *in forma pauperis*, was detained at the Johnson County Adult Detention Center ("JCADC") when he filed this 42 U.S.C. § 1983 action against Defendants Johnson County Board of Commissioners, Calvin Hayden, and Brian Zeeff (collectively, the "Johnson County Defendants"), along with other defendants, alleging that they violated his constitutional rights by failing to provide kosher meals during Ramadan,[1] failing to provide halal meals for Muslims, and serving sack lunches containing non-approved halal food. The matter is now before the Court on the Johnson County Defendants' Motion for Summary Judgment (Doc. 62) and Plaintiff's Motion Regarding Religious Discrimination, Deliberate Indifference, and Retaliation (Doc. 94). Liberally construed, Plaintiff's motion functions as a response in opposition to the Johnson County Defendants' motion for summary judgment. The Court has considered the parties' arguments and is prepared to rule. For the reasons explained below, the Court grants the Johnson County Defendants' motion for summary judgment.

---

[1] The Court recognizes that halal meals are associated with Islamic religious practice and kosher meals are associated with Jewish religious practice, and that each has distinct requirements. However, Plaintiff's filings, at times, appear to conflate these practices and their associated diets. The Court uses the terms "halal" and "kosher" in this Order as Plaintiff does in his filings, solely for purposes of consistency and clarity, and does not intend to conflate the two traditions.

## I.    Plaintiff's Failure to Controvert Defendants' Statements of Fact

Before reciting the uncontroverted facts governing this summary judgment motion, the Court explains why Plaintiff has failed to controvert the Johnson County Defendants' asserted statements of fact as required by this Court's local rules.

The Johnson County Defendants filed and served on Plaintiff a motion for summary judgment and a corresponding notice to a *pro se* litigant who opposes a motion for summary judgment.[2] That notice informed Plaintiff how to comply with both Fed. R. Civ. P. 56 and D. Kan. Rule 56.1. D. Kan. Rule 56.1(a) provides that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." D. Kan. Rule 56.1(b)(1) further provides that "[a] brief in opposition to a motion for summary judgment must begin with a section containing a concise statement of material facts [for] which the party contends a genuine issue exists. Each fact in dispute must be numbered by paragraph, *refer with particularity to those portions of the record upon which the opposing party relies*, and, if applicable, state the number of movant's fact that is disputed."[3] And D. Kan. Rule 56.1(b)(2) provides that "[i]f the party opposing summary judgment relies on any facts not contained in movant's brief, that party must set forth each additional fact in a separately numbered paragraph, *supported by references to the record*."[4]

Here, despite having received notice, Plaintiff failed to comply with these requirements. Plaintiff's three-page response does not address any of the twenty-one statements of fact in the Johnson County Defendants' summary judgment brief. Instead, Plaintiff offers his own seven

---

[2] Doc. 62 (the Johnson County Defendants' Motion for Summary Judgment); Doc. 65 (the Johnson County Defendants' Notice to *Pro Se* Litigant Who Opposes a Motion for Summary Judgment).

[3] D. Kan. Rule 56.1(b)(1) (emphasis added).

[4] D. Kan. Rule 56.1(b)(2) (emphasis added).

statements of fact, which consist solely of conclusory allegations and contain no citations to the record. While "the Court affords some leeway to pro se parties, it cannot merely overlook Plaintiff's failure to state and oppose material facts in compliance with the local rules."[5] Accordingly, the Johnson County Defendants' statements of fact are deemed uncontroverted and admitted, but only to the extent they are properly supported by the summary judgment record.[6]

## II.     Uncontroverted Facts

With the Johnson County Defendants' properly supported facts deemed admitted, the following facts are either uncontroverted or viewed in the light most favorable to Plaintiff as the non-moving party.

Plaintiff was a pretrial detainee at JCADC following his July 4, 2023 arrest by the Olathe Police Department for aggravated assault on a law enforcement officer. He was processed and booked into JCADC that same day. During the initial booking process, Plaintiff reported that he was Christian and that he had no limited diet or restricted living conditions.

On September 14, 2023, Plaintiff submitted a general request stating that he was "changing [his] religion to Muslim."[7] Two days later, on September 16, 2023, he requested to be put on a vegan diet. Under JCADC policy, an inmate who is not already on a special diet may request a vegetarian or vegan diet, and that request is accommodated once processed and after the inmate signs a special diet acknowledgment form. Plaintiff signed that acknowledgment form on September 18, 2023, and his vegan diet began on September 19, 2023.

---

[5] *Elrod v. Walker*, No. 06-3115-SAC, 2011 WL 6372881, at *6 n.3 (D. Kan. Dec. 20, 2011), *aff'd*, 496 F. App'x 793 (10th Cir. 2012).

[6] *See Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (explaining that when a party opposing summary judgment waives its right to respond or controvert the facts asserted in the moving party's summary judgment motion, the court "should accept as true all material facts asserted and properly supported in the summary judgment motion").

[7] Doc. 64-6.

On October 19, 2023, Plaintiff requested to change from a vegan diet to a kosher diet. He was initially informed that he would be required to complete a 30-day waiting period before changing to a religious diet. Under JCADC policy, that waiting period, however, applied only to inmates who were not already on a special diet. Because Plaintiff was on a vegan diet, JCADC staff informed him on October 30, 2023, that he would instead need to discontinue his vegan diet and then wait 90 days before requesting a new diet. On November 1, 2023, Plaintiff requested to come off the vegan diet to begin the process of moving to a kosher diet.

On December 25, 2023, while in the 90-day waiting period, Plaintiff ordered non-kosher food from the commissary. This purchase resulted in an extension of his waiting period, moving its end date to February 17, 2024.

On January 31, 2024, Plaintiff informed JCADC that he had converted to Islam in May 2021. However, JCADC records reflect that between May 2021 and July 6, 2023, Plaintiff had been booked into JCADC three other times, not including the booking at issue in this case. During bookings on August 29, 2022, December 29, 2022, and April 16, 2023, Plaintiff reported that he did not participate in any religion. Had Plaintiff initially notified JCADC that he was Muslim, his dietary accommodations would have been immediate under JCADC policy.

On January 12, 2024, Plaintiff submitted a request to participate in Ramadan, which was scheduled to begin on March 10, 2024. Based on his previous dietary requests, Plaintiff began receiving a kosher diet on February 17, 2024, following completion of the waiting period.

On March 10, 2024, the first day of Ramadan, Plaintiff was to be placed on a halal diet. However, on or about March 10 or March 11, 2024, Plaintiff submitted a dietary request complaining that he had been "given a regular diet tray, not kosher," that he was "doing

4

Ramadan," and that he would "not accept another regular diet tray in place of [his] kosher diet."[8] In the same request, he stated that he "still eat[s] the normal daily calories," and that "just because [he is] doing Ramadan doesn[']t mean [he is] just not eating."[9] JCADC kitchen staff responded on March 11, 2024, stating, "[t]his has been corrected," and outlined the facility's Ramadan breakfast menu, which included an apple, cereal, peanut butter, jelly, bread, a biscuit, margarine, a drink packet, and milk.[10]

While on the halal diet, Plaintiff complained about certain food items he believed were non-kosher, even though those items complied with the halal diet he was then receiving. Kitchen staff responded to Plaintiff's complaints, "[i]f you would like to remain on the kosher diet you've been on in the past, I can remove you from the Ramadan list. [O]therwise, you will be served the items on the Ramadan menu that is set by dietitian on staff."[11] On March 13, 2024, Plaintiff requested to be removed from the Ramadan menu and placed back on a kosher diet, and JCADC returned him to a kosher diet.

On April 23, 2024, Plaintiff submitted another written request stating, "I am a Muslim. The kitchen is not to veer from my kosher tray. Peanut butter tortilla and jelly. Not some crackers and no jelly. I celebrate Ramadan and not Passover. Do not change my meals unless I ask."[12] JCADC kitchen staff responded the same day, explaining that "[k]osher is a Jewish diet not a Muslim diet," and stating that he would recommend Plaintiff be removed from the kosher

---

[8] Doc. 94-6.

[9] *Id.*

[10] *Id.*

[11] Doc. 94-7.

[12] Doc. 94-2.

diet.[13] JCADC kitchen staff also reminded Plaintiff that he had requested to be removed from the Ramadan meal plan when it was active and that "Ramadan is a Muslim tradition."[14]

On April 29, 2024, Plaintiff submitted another grievance in which he asserted that JCADC kitchen staff were "forcing [him] to celebrate Jewish traditions," that the facility did not serve "an actual Halal meal," and that his diet had been switched during Ramadan without checking his medications.[15]

On June 19, 2024, Plaintiff requested to be removed from the kosher diet and returned to a regular diet. On September 1, 2024, he requested to be placed back on a kosher diet. A few days later, on September 5, 2024, he requested to change from a kosher to a halal diet, and on September 8, 2024, he requested to switch again, this time from a halal diet to a vegan diet.

### III. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law.[16] In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party.[17] "There is no genuine [dispute] of material fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[18] A fact is "material" if,

---

[13] *Id.*

[14] *Id.*

[15] Doc. 94-11.

[16] Fed. R. Civ. P. 56(a); *see also Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008).

[17] *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

[18] *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

6

under the applicable substantive law, it is "essential to the proper disposition of the claim."[19]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[20]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[21]  Once the movant has met the initial burden of showing the absence of a genuine dispute of material fact, the burden shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial."[22]

The non-moving party may not simply rest upon its pleadings to satisfy its burden.[23]  Rather, the non-moving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[24]  In setting forth these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[25]  A nonmovant "cannot create a genuine issue of material fact with unsupported, conclusory allegations."[26]  In responding to a motion for summary judgment, a party cannot rest on "ignorance of the facts, on speculation, or on suspicion" to escape summary judgment.[27]

---

[19] *Wright ex rel. Tr. Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[20] *Adler*, 144 F.3d at 670 (citing *Anderson*, 477 U.S. at 248).

[21] *Spaulding v. United Transp. Union*, 279 F.3d 901, 904 (10th Cir. 2002) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

[22] *Anderson*, 477 U.S. at 256; *Celotex*, 477 U.S. at 324; *Spaulding*, 279 F.3d at 904 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

[23] *Anderson*, 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.*, 256 F.3d 1013, 1017 (10th Cir. 2001).

[24] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197–98 (10th Cir. 2000) (quoting *Adler*, 144 F.3d at 670–71).

[25] *Adler*, 144 F.3d at 671.

[26] *Tapia v. City of Albuquerque*, 170 F. App'x 529, 533 (10th Cir. 2006) (citing *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004)).

[27] *Genzer v. James River Ins.*, 934 F.3d 1156, 1160 (10th Cir. 2019) (quoting *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)).

In deciding this motion, the Court is mindful that Plaintiff proceeds *pro se*; therefore, the Court must construe his filings liberally.[28] However, *pro se* plaintiffs may not rely on conclusory allegations to overcome their burden to establish that a genuine issue of material fact exists.[29] The Court cannot assume the role of advocate,[30] nor can the Court "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[31]

## IV.    Analysis

Plaintiff filed suit on March 28, 2024, and filed an Amended Complaint on August 7, 2024. In his Amended Complaint, Plaintiff brought eighteen counts. At the time of filing, Plaintiff was a prisoner seeking relief against a governmental entity; as such, his Amended Complaint was subject to screening in accordance with 28 U.S.C. § 1915A. Following that screening, the Court dismissed Counts II, IV, V, VI, VII, VIII, IX, X, XI, XII, XIII, XV, and XVIII.

As a result, only five claims remain against the Johnson County Defendants. Four are brought under 42 U.S.C. § 1983: (1) Count I, alleging a violation of the First Amendment Free Exercise Clause, (2) Count III, alleging a violation of the Fourteenth Amendment Equal Protection Clause, (3) Count XVI, alleging First Amendment retaliation, and (4) Count XVII, alleging "reprehensive conduct" under the Fourteenth Amendment entitling Plaintiff to punitive damages. The fifth remaining claim is Count XIV, alleging intentional and negligent infliction of emotional distress under Kansas law.

---

[28] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[29] *Hastings v. Campbell*, 47 F. App'x 559, 560 (10th Cir. 2002).

[30] *Hall*, 935 F.2d at 1110.

[31] *Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997).

The Johnson County Defendants move for summary judgment on all five remaining claims. Specifically, Defendants Hayden and Zeeff seek summary judgment on Plaintiff's individual-capacity claims in Counts I, III, and XVI on the basis of qualified immunity. Defendant Johnson County Board of Commissioners argues that it is entitled to summary judgment on those same federal claims because Plaintiff cannot establish municipal liability. All three of the Johnson County Defendants further contend that Plaintiff cannot recover punitive damages under Count XVII and that Count XIV is barred for lack of compliance with the Kansas Tort Claims Act's notice requirement, depriving the Court of subject matter jurisdiction. The Court addresses each of these arguments in turn below.

### A. Qualified Immunity

It is well established that "[i]ndividual defendants named in a § 1983 action may raise a defense of qualified immunity."[32] "The doctrine of qualified immunity shields public officials . . . from damages actions unless their conduct was unreasonable in light of clearly established law."[33] When the defense of qualified immunity is asserted, the burden shifts to the plaintiff to show: "(1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."[34] The Court has discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."[35] "If the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the

---

[32] *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013).

[33] *Elder v. Holloway*, 510 U.S. 510, 512 (1994).

[34] *Cillo*, 739 F.3d at 460.

[35] *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

9

defendant qualified immunity."[36]  "In determining whether the plaintiff has shouldered this heavy burden, '[the Court] construe[s] the facts in the light most favorable to the plaintiff as the non-movant.'"[37]

Defendants Hayden and Zeeff argue that Plaintiff cannot satisfy the first prong of the qualified-immunity analysis because the undisputed evidence shows that they did not violate any of Plaintiff's constitutional rights.  Accordingly, the Court begins, and ultimately ends, its qualified-immunity inquiry at step one by considering whether the summary judgment record would permit a reasonable jury to find that either Defendant Hayden or Zeeff violated Plaintiff's rights under (1) the First Amendment's Free Exercise Clause, (2) the Fourteenth Amendment's Equal Protection Clause, or (3) the First Amendment's protection against retaliation.  For the reasons explained below, the Court concludes that Defendants Hayden and Zeeff are entitled to qualified immunity at step one.

### 1. Count I – First Amendment Free Exercise

Courts perform a two-step inquiry to determine the viability of a prisoner-plaintiff's Free Exercise claim.[38]  First, "the prisoner-plaintiff must show that a prison regulation 'substantially burdened . . . [his] sincerely-held religious beliefs.'"[39]  A prison regulation substantially burdens an inmate's religious exercise when it:

> (1) "requires participation in an activity prohibited by a sincerely held religious belief," (2) "prevents participation in conduct motivated by a sincerely held religious belief," or (3) "places substantial pressure on an adherent either not to

---

[36] *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995)).

[37] *Corona v. Aguilar*, 959 F.3d 1278, 1282 (10th Cir. 2020) (quoting *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015)).

[38] *Polk v. Bunting*, No. 23-2415-DDC-ADM, 2025 WL 1837276, at *7 (D. Kan. July 2, 2025) (citing *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007)).

[39] *Kay*, 500 F.3d at 1218 (alterations in original) (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)).

10

engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief."[40]

If the inmate meets this burden, the defendant may then show that the prison regulation at issue is "reasonably related to legitimate penological interests."[41] At that point, the Court balances the following factors to determine the reasonableness of the regulation:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.[42]

Here, Plaintiff alleges the second and third types of substantial burden—that the government (1) prevented him from engaging in conduct motivated by his sincerely held religious beliefs, and (2) placed substantial pressure on him to engage in conduct contrary to those beliefs. Specifically, Plaintiff alleges in Count I that the Johnson County Defendants refused to comply with his dietary requests and served him non-halal meals during Ramadan, that the food provided to him was inadequate to properly practice Ramadan, and that he was forced to fast during Jewish Passover under threat of discipline or retaliation. The uncontroverted summary judgment record, however, does not support these allegations.

The uncontroverted facts show that Plaintiff was placed on a halal diet during Ramadan and was removed from that diet only at his request. The record further reflects that, at the outset of Ramadan, Plaintiff received a regular diet tray on at least one occasion, but jail staff promptly corrected the error and provided the correct Ramadan trays thereafter. "But not every

---

[40] *Blair v. Raemisch*, 804 F. App'x 909, 916–17 (10th Cir. 2020) (quoting *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010)).

[41] *Kay*, 500 F.3d at 1218 (quoting *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 349 (1987)).

[42] *Id.* at 1219 (quoting *Boles*, 486 F.3d at 1181).

infringement on a religious exercise will constitute a substantial burden."[43]  At the very least, the substantial burden test requires more than "mere inconvenience, negligence, and isolated or sporadic incidents."[44]  The Court finds that this isolated and promptly corrected mistake at the outset of Ramadan amounts to, at most, negligence and does not constitute a substantial burden.

Beyond that isolated mistake, Plaintiff has offered no evidence that the food provided to him during Ramadan was inadequate to properly practice his religion.  The Johnson County Defendants submitted documentation of the Ramadan menu with their summary judgment motion, and Plaintiff neither challenges the menu as noncompliant with his religious beliefs nor even addresses it in his response.  Furthermore, Plaintiff offers no evidence, beyond his own affidavit, that he was forced to fast for Jewish holidays under threat of discipline or retaliation.

The only evidence Plaintiff does offer in opposition to summary judgment, aside from several photos of diet change removal requests, is his own affidavit, in which he states that the "Johnson County Sheriff's Office failed and refused to provide Halal meals to Muslim inmates, including [himself]," that he was "forced to participate in Jewish holidays under threat of retaliation and discipline," and that he was "compelled to fast for Jewish holidays against [his] will and religious beliefs."[45]  However, to survive summary judgment, a "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; *conclusory and self-serving affidavits are not sufficient*."[46]  Plaintiff's affidavit is conclusory and self-serving and fails to identify specific dates, particular non-compliant meals, the nature of any

---

[43] *Mallard v. Howard*, No. 22-4053-EFM, 2024 WL 726983, at *6 (D. Kan. Feb. 22, 2024) (citing *Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010)).

[44] *Schlobohm v. Ash*, No. 23-3014-JWL, 2023 WL 346081, at *7 (D. Kan. Jan. 20, 2023).

[45] Doc. 94-1 ¶¶ 3–5.

[46] *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (emphasis added).

alleged threat, or any other concrete facts from which a reasonable jury could find a substantial burden on his sincerely held religious beliefs.

Although the Court acknowledges that Plaintiff proceeds *pro se*, his conclusory, self-serving assertions in his affidavit cannot, standing alone, create a genuine issue of material fact. Because Plaintiff's claim fails at the first step of the free exercise analysis, the Court need not reach the penological-interest inquiry. And because Plaintiff fails to establish a free exercise claim, he has not shown a violation of his First Amendment rights and therefore cannot satisfy the first prong of the qualified-immunity analysis. Accordingly, Defendants Hayden and Zeeff are entitled to qualified immunity and summary judgment on Count I.

### 2. Count III – Fourteenth Amendment Equal Protection

In order to establish a viable equal protection claim, a plaintiff "must first make a threshold showing that they were treated differently from others who were similarly situated to them."[47] Additionally, "plaintiffs in a prison context have the burden of demonstrating that 'the difference in treatment was not reasonably related to legitimate penological interests.'"[48]

In Count III, Plaintiff alleges that, as a Muslim practitioner, he was treated differently from Jewish inmates at JCADC. He claims that he was refused kosher meals during Ramadan while Jewish inmates received them. Plaintiff appears to conflate kosher meals—provided at JCADC as a Jewish religious diet—with halal meals, which are provided as a Muslim religious diet. The uncontroverted facts show that Plaintiff received the religious diets he requested: he was placed on a halal diet once Ramadan began and later placed on a kosher diet, both at his own

---

[47] *Tenison v. Byrd*, 826 F. App'x 682, 688 (10th Cir. 2020) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998)).

[48] *Rojas v. Heimgartner*, 604 F. App'x 692, 695 (10th Cir. 2015) (quoting *Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006)).

request. And the record indicates that JCADC staff specifically informed Plaintiff that kosher is provided as a Jewish diet when he complained that, as a Muslim who celebrated Ramadan, he required kosher meals. Apart from his own conclusory assertions, Plaintiff offers no evidence that similarly situated Jewish inmates were treated more favorably with respect to religious diets, or that any difference in treatment existed at all. Without evidence that he was treated differently from similarly situated inmates, Plaintiff cannot make the required threshold showing for an equal protection claim.

Accordingly, because Plaintiff has not established a constitutional violation under the Equal Protection Clause, he fails to satisfy the first prong of the qualified-immunity analysis. Defendants Hayden and Zeeff are therefore entitled to qualified immunity and summary judgment on Count III.

### 3. Count XVI – First Amendment Retaliation

Although Count XVI appears to be directed primarily at Defendant Robb Nathaniel, to the extent Plaintiff intends to assert a First Amendment retaliation claim against the Johnson County Defendants, the Court addresses that claim here as well.

To establish retaliation in violation of the First Amendment, a plaintiff must prove that (1) he was engaged in constitutionally protected activity, (2) defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that protected activity, and (3) his protected conduct substantially motivated defendant's actions.[49]

In Count XVI, Plaintiff alleges that Defendant Nathaniel told Plaintiff that if Plaintiff continued to file grievances related to being forced to practice Judaism, then he would be

---

[49] *Douglass v. Garden City Cmty. Coll.*, 652 F. Supp. 3d 1329, 1344 (D. Kan. 2023).

14

removed from the kosher diet. While Plaintiff can establish the first element of this claim,[50] he fails to establish the second and third.

Plaintiff offers no evidence that either Defendant Hayden or Defendant Zeeff disciplined him, threatened him with discipline, or otherwise caused any injury that would chill a person of ordinary firmness from continuing to file grievances. The uncontroverted facts instead show that Plaintiff experienced only changes in diet, and that those changes corresponded to his own repeated requests to move between regular, vegan, kosher, and halal diets. Plaintiff identifies no specific instance in which he was actually removed from a religious diet as a consequence of filing grievances, and the record reflects that he nonetheless continued to submit grievances and diet requests throughout the relevant period. Accordingly, no reasonable jury could find that Plaintiff suffered a retaliatory injury, or that any alleged adverse action was substantially motivated by his protected activity.

For these reasons, Plaintiff has not established a viable First Amendment retaliation claim against Defendants Hayden and Zeeff and thus cannot satisfy the first prong of the qualified-immunity analysis. Defendants Hayden and Zeeff are therefore entitled to qualified immunity and summary judgment on Count XVI to the extent that claim is asserted against them.

### B. Municipal Liability

Having found that Defendants Hayden and Zeeff are entitled to qualified immunity and summary judgment on Counts I, III, and XVI, the Court turns to Defendant Johnson County Board of Commissioners' argument that it is likewise entitled to summary judgment on those same counts because Plaintiff cannot establish municipal liability.[51]

---

[50] "The filing of prison grievances is constitutionally protected activity." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)).

[51] The Court notes that while Plaintiff's *Monell* "claim" was dismissed as part of the screening process pursuant to 28 U.S.C. § 1915A (Doc. 43 at 18), it still addresses municipal liability here in connection with

The Supreme Court has made clear that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."[52] Instead, a local government may be liable under § 1983 only when a plaintiff establishes "(1) a constitutional violation by a governmental employee, (2) the existence of a governmental custom or policy and (3) a direct causal link between the custom or policy and the violation."[53]

As previously discussed, Plaintiff has failed to establish a violation of his constitutional rights under the Free Exercise Clause, the Equal Protection Clause, or the First Amendment's protection against retaliation. Without an underlying constitutional violation, Plaintiff cannot establish municipal liability.[54] Accordingly, Defendant Johnson County Board of Commissioners is entitled to summary judgment on Counts I, III, and XVI.

### C. Count XVII – Punitive Damages

The Johnson County Defendants move for summary judgment on Count XVII, in which Plaintiff requests punitive damages under a claim titled "Fourteenth Amendment Reprehensible Conduct."[55] Punitive damages are only available in § 1983 actions "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."[56]

---

Plaintiff's remaining § 1983 claims. *See Scholtz v. Johansen*, No. 24-CV-02318-TC-TJJ, 2025 WL 3122805, at *5 (D. Kan. Nov. 7, 2025) ("[T]here is no independent cause of action for *Monell* liability as the Amended Complaint purports to envision. Instead, the *Monell* doctrine generally describes the requirement for imposing liability against a municipal entity . . . .").

[52] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

[53] *Douglass*, 652 F. Supp. 3d at 1345 (citing *Monell*, 436 U.S. at 694).

[54] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993) ("A municipality may not be held liable where there was no underlying constitutional violation by any of its officers.").

[55] Doc. 28 at 5.

[56] *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Here, as discussed above, Plaintiff has not shown that any of his federally protected rights were violated. Even assuming he could establish a constitutional violation, there is no evidence in the record that any of the Johnson County Defendants acted with evil motive or intent, or with reckless or callous indifference to his rights. Accordingly, the Johnson County Defendants are entitled to summary judgment on Count XVII.

### D. Count XIV – Intentional Infliction of Emotional Distress

Lastly, the Johnson County Defendants move for summary judgment on Plaintiff's Kansas law claim for intentional infliction of emotional distress alleged in Count XIV, arguing that Plaintiff has not complied with the notice requirements under the Kansas Tort Claims Act ("KTCA"),[57] thereby depriving the Court of subject matter jurisdiction over that claim.

"It is a longstanding rule that filing a proper notice of a claim is a prerequisite to filing an action with the district court against a county or other municipality."[58] The notice requirement under the KTCA "applies not only to claims against a municipality, but also to claims against municipal employees acting within the scope of their employment."[59] A plaintiff must file the notice with the clerk or the governing body of the municipality, and the notice must set forth the facts and circumstances giving rise to the claim.[60] "Failure to provide the statutory notice of a claim . . . precludes relief."[61] "Until the statutory condition precedent is met, a district court is without subject matter jurisdiction over a claim against a municipality."[62]

---

[57] K.S.A. § 12-105b.

[58] *Myers v. Bd. of Cnty. Comm'rs of Jackson Cnty.*, 127 P.3d 319, 325 (Kan. 2006).

[59] *Reindl v. City of Leavenworth*, 361 F. Supp. 2d 1294, 1301 (D. Kan. 2005).

[60] *Hulett v. Rodden*, No. 24-1090-EFM-ADM, 2025 WL 1555033, at *4 (D. Kan. June 2, 2025).

[61] *Myers*, 127 P.3d at 325.

[62] *Crump v. Johnson Cnty. Bd. of Comm'rs*, No. 24-3036-EFM, 2025 WL 1555025, at *12 (D. Kan. June 2, 2025) (citing *Sleeth v. Sedan City Hosp.*, 317 P.3d 782, 793 (Kan. 2014)).

17

Here, Plaintiff asserts Count XIV against Defendant Johnson County Board of Commissioners, a municipal entity, and against Defendants Hayden and Zeeff, who are employees of the Johnson County Sheriff's Office. Plaintiff's allegations against Defendants Hayden and Zeeff arise from their decisions and conduct relating to his confinement, diet, and religious accommodations at JCADC, all of which occurred within the scope of their employment with the Johnson County Sherriff's Office. Accordingly, Count XIV falls within the scope of the KTCA, and the statutory notice requirement applies to the claim against all of the Johnson County Defendants.

Furthermore, Plaintiff neither alleges in his Amended Complaint nor offers any evidence that he filed a written notice of his claim as required by the KTCA. Plaintiff does not even address this issue in his response to the Johnson County Defendants' motion for summary judgment. Accordingly, the Court lacks subject matter jurisdiction over this claim. Because the Court lacks subject matter jurisdiction, it dismisses Count XIV as to the Johnson County Defendants without prejudice rather than granting summary judgment.

### E. Attorney's Fees

Finally, the Johnson County Defendants request that the Court award them costs and attorney's fees under 42 U.S.C. § 1988. Under that provision, when a defendant prevails in a § 1983 action, the Court may award attorney's fees only if "the plaintiff's action was frivolous, unreasonable, or without foundation."[63] This is a "quite high" standard.[64]

Here, the Johnson County Defendants provide no analysis in support of their request for attorney's fees and do not contend—let alone establish—that Plaintiff's claims were frivolous,

---

[63] *Smith v. Williams*, No. 20-CV-2224-EFM, 2024 WL 1834570, at *1 (D. Kan. Apr. 26, 2024).
[64] *Id.*

unreasonable, or without foundation. Nor have they complied with D. Kan. Rule 54.2, which provides the procedural framework for seeking statutory attorney's fees in this District. Accordingly, the Court denies the Johnson County Defendants' request for attorney's fees under § 1988.

**IT IS THEREFORE ORDERED BY THE COURT** that the Johnson County Defendants' Motion for Summary Judgment (Doc. 62) is **GRANTED** with respect to Counts I, III, XVI, and XVII. Count XIV is dismissed without prejudice as to the Johnson County Defendants for lack of subject matter jurisdiction. The Clerk is directed to terminate Defendants Johnson County Board of Commissioners, Calvin Hayden, and Brian Zeeff from this action.

**IT IS FURTHER ORDERED** that Plaintiff's Motion Regarding Religious Discrimination, Deliberate Indifference, and Retaliation (Doc. 94), which the Court has construed as a response to the Johnson County Defendants' Motion for Summary Judgment, is **DENIED**.

**IT IS FURTHER ORDERED** that the Johnson County Defendants' request for attorney's fees under 42 U.S.C. § 1988 is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 15, 2025

                                          S/ Julie A. Robinson
                                          JULIE A. ROBINSON
                                          UNITED STATES DISTRICT JUDGE